IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DAVID STEVEN BROWN,              §
TDCJ-CID NO. 1258181,            §
                                 §
          Petitioner,            §
                                 §
v.                               §     CIVIL ACTION NO. H-07-1572
                                 §
NATHANIEL QUARTERMAN,            §
                                 §
          Respondent.            §

## MEMORANDUM OPINION AND ORDER

David Steven Brown, an inmate of the Texas Department of
Criminal Justice - Correctional Institutions Division (TDCJ-CID),
filed a federal Petition for a Writ of Habeas Corpus by a Person in
State Custody under 28 U.S.C. § 2254 challenging a state court
conviction. Respondent Nathaniel Quarterman has filed a Motion for
Summary Judgment (Docket Entry No. 14) supported by state appeal
and habeas records.

## I.  Procedural History

A jury convicted Brown of aggravated robbery, and the court
sentenced him to forty-five years' confinement in the TDCJ-CID.
State v. Brown, No. 896579 (209th Dist. Ct., Harris County, Tex.,
Nov. 12, 2003). Brown appealed the judgment, which was affirmed by
the Court of Appeals for the Fourteenth District of Texas. Brown
v. State, No. 14-03-01265-CR, 2005 WL 363950 (Tex. App. -- Houston

[14th Dist.] Feb. 17, 2005).  The Texas Court of Criminal Appeals refused Brown's petition for discretionary review (PDR) on July 27, 2005.  <u>Brown v. State</u>, No. 0426-05.

On April 21, 2006, Brown filed a state application for writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure.  The Court of Criminal Appeals denied the application without a written order on findings of the trial court without a hearing.  <u>Ex parte Brown</u>, No. 66,262-01 (Tex. Crim. App. Feb. 21, 2007).  Brown filed the instant habeas petition with this court on April 30, 2007.

## II.  <u>Facts Established at Trial</u>

The court finds that a recitation of the facts established at the state trial would be useful in evaluating the Petition and the Motion for Summary Judgment.

> On the evening of November 25, 2001, Norisa Reed was working in the courtesy booth of a grocery store in Harris County, Texas.  When the store closed, employees checked the entire store to make sure no customers remained inside.  Then Helen Fountain, the acting manager, locked the doors.  The cashiers brought their registers to Reed in the secured courtesy booth for Reed to count the money and lock it in the safe.  Afterwards, following customary procedure, Fountain unlocked the front door and let all of the employees out of the store. Only she and Reed remained inside.
>
> Suddenly, a man approached Reed from behind and said, "black girl, black girl, lay on the ground."  Reed turned around and saw a man wearing a ski mask holding a long knife with a brown handle.  Afraid the man would stab her, Reed laid down on her side in a fetal position. Fountain subsequently walked into the booth and said, "oh, my gosh, what is going on?"[FN1]  The man told Fountain

to get the money out of the safe.  Fountain emptied the safe, put the money in a bag, and gave it to the man. The man told Fountain to let him out of the store, which she did.[FN2]  Reed called 9-1-1.

> FN1. Reed testified that Fountain seemed to be acting.

> FN2. Reed testified that she found it strange that the man asked Fountain to let him out of the store because he should have had no way to know that she had the keys.

Kenneth Belvin, a sacker, was standing outside approximately ten to thirteen feet away from the front door waiting for his mother to pick him up.  Belvin saw a green Ford Explorer driven by a fairly heavy female in her mid-sixties with light gray hair pull up to the front of the store.[FN3]  Shortly thereafter, Belvin saw appellant exit the store with a brown paper bag and get into the Ford Explorer, which drove away.[FN4]

> FN3. The evidence shows that appellant's mother is in her late fifties or early sixties, is short and stocky, and drives a green Ford Explorer.

> FN4. Belvin testified that he recognized appellant because he had met and had a conversation with him in the past.  The way in which appellant carried the bag of money prevented Belvin from seeing appellant's face; however, Belvin was able to identify appellant because of his long salt-and-pepper-colored hair, his clothes, and his snakeskin boots.

Terry Waokup, the store's supervising manager,[FN5] heard about the robbery and came to the store to stop the surveillance tape and give it to the police.  After several unsuccessful attempts to eject the tape, the video recorder was taken apart and the tape was removed with some damage to the casing and some electric tape sticking out.

> FN5. Waokup testified that he had worked at the store for thirty-two years and that he has been the manager for the last twenty-eight or twenty-nine years.

-3-

The twenty-four-hour tape, with a new outer casing, was
admitted into evidence along with an edited version that
showed only the actual occurrence.  The videotape showed
the robber pulling off his mask.  William Dybala, the
store's director, and Waokup both testified that they had
seen appellant many times at the store and that both
believed appellant is the man on the videotape.[FN6]

> FN6. Dybala believed the man on the videotape
> was appellant because it looked like his
> profile.

<u>Brown</u>, 2005 WL 363950 at *1-2.


### III.   <u>Brown's Grounds for Relief</u>

Brown asserts the following grounds for relief in his petition

(Docket Entry No. 1):

A.   Brown's trial counsel was ineffective because he

    1.   failed to request a hearing and examination regarding
        Brown's competency to stand trial;

    2.   failed to interview and secure the attendance at trial of
        available alibi witnesses;

    3.   mishandled the State's evidence, which resulted in
        bolstering of a State witness;

    4.   failed to object to trial court's response to a question
        from the jury during deliberations;

    5.   failed to object to the trial court's reading witness
        testimony back to the jury during deliberations; and

    6.   failed to object to the State's use of perjured
        testimony.

B.   The trial court violated Brown's due process rights under the
Fourteenth Amendment when it failed to enter a <u>sua</u> <u>sponte</u>
order for a competency examination.

C.   The prosecutor used perjured testimony at trial.

-4-

D.   Brown's appellate counsel was ineffective because he

    1.   used an outdated and incorrect standard of review in his brief;

    2.   allowed the Court of Appeals to misstate the record in its Memorandum Opinion and base its judgment upon an incomplete consideration of the record;

    3.   inadequately briefed the record.

Petition, Docket Entry No. 1 at pages 7-8, 7A-7H, 8A-8C.

## IV.   **Parties' Arguments and Evidence**

The respondent contends in his Motion for Summary Judgment (Docket Entry No. 14) that Brown's ineffective assistance of counsel claims (A and D) should be denied because they have no merit.  The respondent asserts that the claims were rejected by the Court of Criminal Appeals when it denied Brown's state habeas application and that Brown has failed to provide any evidence that his trial attorney's performance was deficient or that he was prejudiced by his trial attorney's performance.  The respondent further argues that Brown cannot show that his appellate attorney was deficient or that his performance prejudiced the outcome of his appeal.  The respondent contends that Brown's claim that the trial court abused its discretion by failing to conduct a competency examination is procedurally barred.  Finally, respondent argues that Brown's claim that the prosecutor used perjured testimony should be dismissed because he cannot show that the testimony in question was false.

-5-

Brown has filed an 'Opposition' (Docket Entry No. 15) to the respondent's Motion for Summary Judgment and raises several arguments in support of his position.  Brown contends his trial attorney was ineffective because Brown was not competent to stand trial and that his attorney was aware of his impairment.  He further complains that his trial attorney was ineffective in failing to insure that his mother was present at his trial in order to provide alibi witness testimony and in failing to object to the admission of photographic evidence that bolstered his identification as the robber.

Brown repeats his complaint that his trial attorney failed to object to an improper reading of testimony during jury deliberations and that he mishandled evidence, an envelope used to contain the twenty-four-hour surveillance tape that was not admitted into evidence.  Both issues are purportedly related to his defense of misidentification.  Brown also reiterates his perjured testimony claim and asserts that the perjury was both obvious and prejudicial to his defense.

Brown contends that his appellate counsel was ineffective in using an incorrect standard of review regarding the admissibility of the surveillance tape.  Brown further contends that the Court of Appeals misstated the record regarding the admission of the video tape.  He alleges that the Court of Appeals held that the original tape with a new casing was admitted into the record when actually an edited copy had been admitted.

With regard to the procedurally barred claims of incompetency and perjury, Brown contends that he can show cause for the default on the grounds that he received ineffective assistance of counsel at trial and on direct appeal.  He argues that he was prejudiced because he was under the influence of drugs during his trial and therefore incompetent.  Brown also implies that he would not have been convicted if the jury had been made aware that testimony regarding the surveillance tape was false.

## V.   Standard of Review and Applicable Laws

Brown's petition for a writ of habeas corpus is subject to review under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996.  28 U.S.C. § 2254; Woods v. Cockrell, 307 F.3d 353, 356 (5th Cir. 2002); Nobles v. Johnson, 127 F.3d 409, 413 (5th Cir. 1997), citing Lindh v. Murphy, 117 S.Ct. 2059, 2068 (1997).  A federal habeas petitioner challenging a state court decision is not entitled to relief unless the state court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The new AEDPA provisions have "modified a federal habeas court's role in reviewing state prisoner applications in order to

-7-

prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 122 S.Ct. 1843, 1849 (2002), citing Williams v. Taylor, 120 S.Ct. 1495, 1518 (2000). Habeas relief should only be granted where the state court decision is both incorrect and objectively unreasonable. Martin v. Cain, 246 F.3d 471, 476 (5th Cir. 2001), citing Williams, at 1521.

The section 2254(d) test is applied only to claims that have been "adjudicated on the merits in state court." Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000). "The term 'adjudication on the merits,' like its predecessor 'resolution on the merits,' refers to whether the state court reached a conclusion as to the substantive matter of a claim, as opposed to disposing of the matter for procedural reasons. Valdez v. Cockrell, 274 F.3d 941, 950 (5th Cir. 2001), citing Neal v. Puckett, 239 F.3d 683, 686-87 (5th Cir. 2001). A "denial" of a state habeas application signifies that the Texas Court of Criminal Appeals addressed and rejected the merits of a particular claim. Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In contrast, a "dismissal" conveys that the Court of Criminal Appeals refused to consider the claim without reaching the claim's merits. Id. When the state court dismisses a claim on procedural grounds, the claim is procedurally barred from review by federal courts. Ylst v. Nunnemaker, 111 S.Ct. 2590, 2593 (1991).

-8-

## VI.   <u>Analysis</u>

**A.   Ineffective Assistance of Trial Counsel**

In his first claim, Brown alleges that his trial counsel was ineffective for failing to address Brown's incompetency to stand trial; interview and secure the witnesses; properly review the State's evidence; object to the trial court's response to a jury question; object to the trial court's reading of witness testimony; and object to the State's use of perjured testimony.   The respondent contends that the claims are without merit and should be denied.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.   U.S. CONST. amend. VI.   A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in <u>Strickland v. Washington</u>, 104 S.Ct. 2052 (1984).   To assert a successful ineffectiveness claim a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.   <u>Id.</u> at 2064.   The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.   <u>Green v. Johnson</u>, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.   <u>Strickland</u>, 104 S.Ct. at 2064.   In determining whether counsel's performance was deficient,

judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that the trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. West v. Johnson, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Strickland, 104 S.Ct. at 2066. Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 2068. To determine prejudice the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993). Unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. Id.

Brown presented his ineffective assistance of trial counsel claims in his state habeas application. Ex parte Brown, No. 66,262-01 at 7-20. The trial court included the following in its Conclusions of Law:

-10-

    1.    The applicant fails to show in all things that trial or appeal counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984); <u>Hernandez v. State</u>, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the <u>Strickland</u> standard in Texas); and <u>Narvaiz v. State</u>, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part <u>Strickland</u> standard).

    . . . .

    4.    The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

    5.    The applicant fails to show that he did not have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46.02 § 1 (Vernon Supp. 2006).

<u>Ex parte Brown</u>, No. 66,262-01 at 176-77.

The Court of Criminal Appeals denied the application without a written order based on the trial court's findings without a hearing. <u>Id.</u> at cover. A federal habeas court must presume the underlying factual determinations of the state court to be correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Miller-El v. Cockrell</u>, 123 S.Ct. 1029, 1042 (2003).[1]   Under 28

---

[1]    "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." <u>Valdez v. Cockrell</u>, 274 F.3d 941, 948

(continued...)

U.S.C. § 2254(d)(2) "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El, 123 S.Ct. at 1041. The court will examine Brown's allegations regarding his trial counsel's performance and consider whether there is any evidence in the record to support them.

1.   Competence to Stand Trial

Brown contends that his trial attorney was ineffective by not requesting a competency hearing on the day that his trial commenced. (Docket Entry No. 1 at 8) Brown contends that he had been assaulted prior to trial and was under the influence of medication when he was brought into court. Id. See also Docket Entry No. 15 at 5-6. He further alleges that the drugs affected him to the extent that he could not function during trial and that his attorney was aware of his impairment. Id. During the habeas proceedings the state trial court ordered Brown's trial attorney, Charles Hinton, to file an affidavit in response to Brown's allegations. Ex parte Brown at 61-67. Hinton complied and gave the following answers to the court's inquiries:

---

[1]      (...continued)
        n.11 (5th Cir. 2001); see also Young v. Dretke, 356 F.3d 616,
        629 (5th Cir. 2004) ("As a federal habeas court, we are bound
        by the state habeas court's factual findings, both implicit
        and explicit."); Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th
        Cir. 1997) (findings of fact can be implied from explicit
        conclusions of law).

1.   Whether trial counsel believed that at the time of trial applicant had sufficient ability to assist in his defense, had a reasonable degree of rational understanding, and a rational and factual understanding of the proceedings against him?

Answer:  There is no doubt in my mind that applicant was competent to stand trial.  We discussed the case on many occasions.  At the time of trial applicant was able to discuss the facts of the case.  Applicant was able to ask me questions and point out what he thought were the weaknesses in the State's case.

2.   Whether trial counsel noticed anything unusual about applicant's speech, behavior, or demeanor that caused trial counsel concern about applicant's competency, sanity or possible impairment due to medication at any time during the representation of applicant (if so please explain what actions trial counsel took in response to this concern and if no actions were taken please explain why)?

Answer:  The only time I noticed anything unusual about the applicant was on the day when I was first appointed to represent him.  At that time applicant acted almost catatonic so I moved for a competency examination and Judge McSpadden ordered a competency examination. Ramon A. Laval, Pd.D., Licensed Psychologist examined applicant and opined that applicant was either faking or exaggerating symptoms suggestive of a mental illness. (See attached competency examination.) Applicant explained to me after he was examined that "I've got to play the crazy role" since he was out on parole.  (See attached sheet containing my note as to what applicant told me.)  Applicant pretended at first to have some psychiatric problem but readily admitted to me that he was faking his symptoms after Dr. Laval found him competent.

3.   Whether trial counsel had any reason to request a competency hearing for applicant or investigate applicant's competency or sanity (if so, explain what actions trial counsel took in response to this concern and the results of any investigations; if no actions were taken please explain why):

Answer:   As stated above I requested a competency examination when I first met applicant.  The competency

report opined that applicant was competent and also that
the evidence suggested that applicant had been faking
symptoms of mental illness.   Applicant admitted to me
that he thought he had to play the crazy role because he
was on parole. Once applicant realized that feigning
mental illness was not working to his advantage he acted
fine and discussed the case with me on approximately 10
visits at the Harris County Jail. There was no reason to
request a competency hearing for applicant since he was
competent.

4.   Whether trial counsel was aware of any medication
being taken by applicant at the time of his trial and if
so, please explain trial counsel's response to this
information;

Answer:  I don't remember whether applicant was taking
any medication at the time of his trial but applicant was
able to understand the facts of the case and also he was
able to assist me in defending himself.

Ex parte Brown at 149-150.

The trial court found that Hinton's affidavit was credible and

that his asserted facts were true.  Id. at 174.  The court further

found that Hinton had investigated Brown's competency by requesting

a competency examination and that an examination was conducted, and

Brown was found to be competent.  Id.  The state habeas finding is

supported by the Clerk's Record, which includes a signed Motion for

Psychiatric   Examination   and   an   Order   Granting   Motion   for

Psychiatric Examination.  1 CR 7-8.  In light of the record Hinton

cannot be found to have been ineffective in not requesting a

competency examination since he had convincing evidence that Brown

was in fact competent.  See Moody v. Johnson, 139 F.3d 477, 478

(5th Cir. 1998).  Therefore, this claim will be denied.

-14-

2.   <u>Failure to Interview and Call an Alibi Witness</u>

Brown contends that Hinton was ineffective because he failed to interview and call his mother, Bertie Brown, as an alibi witness.  (Docket Entry No. 1 at 9)  He alleges that Bertie would have testified that he was at her home at the time of the robbery. <u>Id.</u>  The state trial court ordered Hinton to answer specific questions to this allegation during the habeas proceedings.  Hinton stated the following in his affidavit:

5.   Whether trial counsel investigated and/or interviewed Bertie Brown, applicant's mother (if so, please summarize the results of this investigation; if not, please state the reasons for not so investigating this witness):

Answer:  My recollection is that applicant did not have an alibi defense for the simple reason that applicant told me that he "didn't know where he was 11/25/01." Attached is a copy of my notes concerning applicant's comments.  My file reflects that I visited applicant at the Harris County Jail on 10 different occasions in order to discuss this case and several others pending against the applicant.  Alibi testimony by Bertie Brown, applicant's mother, was not something that applicant suggested to me as a valid defense to the charge. Consequently, while I believe I did talk to Bertie Brown at some time, I do not believe I ever seriously considered developing her as an alibi witness because applicant never seriously asked me to pursue developing her as an alibi witness.

6.   Whether trial counsel was aware that witness Bertie Brown claimed applicant had an alibi for the instant offense (if so, please state the reasons trial counsel chose not to call this witness to testify; if not, please explain what information applicant gave counsel about his possible defenses and counsel's response to this information);

Answer:  I was never made aware that Bertie Brown claimed that applicant had any substantial credible alibi for the

instant offense. I hired investigator Ernest Humberson
to assist me in preparing applicant's defense.
Investigator Humberson talked to applicant. I talked to
applicant on numerous occasions. If applicant had
indicated to either Investigator Humberson or myself that
he had a valid alibi defense we certainly would have
investigated and developed such a defense. Applicant
told me that he didn't know where he was on the date of
the alleged instant offense. Applicant told me that he
didn't commit the instant offense and that the state's
main witness Kenneth Belvin was not a credible witness
and that Kenneth Belvin was mistaken in his identifica-
tion of applicant. Investigator Ernest Humberson
obtained a taped statement from state's witness Kenneth
Belvin on 7-14-03. I and applicant discussed how we
should proceed after the state rested it's [sic] case and
we mutually agreed that we should not put on any
evidence, but that we should rest right behind the state.

7.   Whether trial counsel found witness Bertie Brown
credible.

Answer: I had no legitimate reason for developing an
alibi defense for applicant by using Bertie Brown's
testimony since applicant told me that he didn't know
where he was on November 25, 2001. I do believe I had
conversation with Bertie Brown but it concerned using her
as a witness for punishment purposes in the event
applicant was convicted. And Bertie Brown did write a
letter that was included in the PSI report. In her
letter there was no mention of applicant being at her
home at the time of the aggravated robbery. I had no
reason to assess the credibility of Bertie Brown for
purposes of providing testimony for an alibi defense
since she was not developed as a witness for such a
purpose.

Ex parte Brown at 150-52.

The habeas court found that Hinton's affidavit was credible

and concluded that neither Brown, Bertie Brown, nor the

investigator provided any information to Hinton indicating that

Bertie Brown was a possible alibi witness. Id. at 175. Moreover,

Brown never indicated that he had an alibi defense, and Bertie

Brown's letter submitted for Brown's presentence investigation did not include any alibi information.  Id.  The habeas court then concluded that Hinton had no legitimate reason for pursuing an alibi defense based on Bertie Brown's testimony.  Id. at 175-76. Having reviewed the record, and noting that Hinton stated that he had interviewed Bertie Brown, this court will not second-guess Hinton's strategy regarding which witnesses would have given helpful testimony.  See Wilkerson v. Cain, 233 F.3d 886, 892 (5th Cir. 2000).[2]  Brown has also failed to show that Bertie Brown's testimony would have affected the outcome of the trial.  In light of the record, the state court's decision regarding Hinton's omission of Brown's mother as a witness cannot be found to be clearly wrong, and Brown is not entitled to relief on this issue. Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir. 1986).

### 3.  Admission of State's Evidence

Brown contends that Hinton was ineffective because he allowed a photograph (State's Exhibit No. 7) to be admitted without objection during the testimony of Kenneth Belvin.  (Docket Entry No. 1 at 9-10)  Belvin testified that the photograph, which depicted Brown, was a picture of the robber.  Brown argues that the photograph was not produced during discovery and that Hinton should

---

[2]    The state appellate opinion, apparently relying on trial testimony, indicates that Bertie Brown resembled the getaway driver who picked up Brown after the robbery.  See Brown, 2005 WL 363950, at *1 n.3.  See also Reporter's Record, Vol. 5 RR 66, 130.

have raised an objection. Id. at 10. Brown implies that the photograph was necessary to link him to the robbery.

This claim was presented to and denied by the Court of Criminal Appeals at the state habeas proceedings. This claim is subject to dismissal as unsupported because Brown points to no evidence to support it. See Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001). Moreover, the reporter's record reflects that the witness had previously seen and spoken with Brown in the store where the robbery occurred and that the witness was able to positively identify Brown at or near the time of the incident. 5 RR 68. Therefore, the claim is subject to dismissal because Brown cannot show how the photograph's admission significantly affected the trial's outcome. Strickland, 104 S.Ct. at 2068.

### 4.   Trial Court's Response to Jury Questions

Brown argues that his trial attorney was ineffective for not objecting to the trial court's responses to the jury's questions during deliberations. (Docket Entry No. 1 at 11) He specifically complains that the trial court allowed the jury to view an envelope that contained the store's video surveillance tape. Id. Brown contends that the jury should not have been allowed to view the envelope because it had not been admitted into evidence. Id. Brown further contends that the trial court read back to the jury a portion of witness Norisa Reed's testimony in which she described the robbery suspect.

-18-

Brown has failed to satisfy the prejudice prong of his ineffective assistance of counsel claim with regard to the envelope because there is no indication that it affected the outcome of the trial. See Jackson v. Johnson, 150 F.3d 520, 525 (5th Cir. 1998). The envelope merely contained the videotape, and the reliability of the tape was appropriately left for the jury's determination. Id. The trial court cannot be found to have acted improperly in reading the testimony back to the jury, and Brown was not harmed by the court's action, because there was ample evidence presented at trial to connect Brown to the robbery. United States v. Sacco, 869 F.2d 499 (9th Cir. 1989). Therefore, this issue shall be denied.

5.   Prosecutor's Use of Alleged Perjured Testimony

Brown alleges that Terry Waokup, the store manager, gave perjured testimony and argues that Hinton was ineffective for failing to make an objection. (Docket Entry No. 1 at 12) According to Brown, Waokup falsely stated that he arrived at the store before the police and that the videotape surveillance machine was functioning properly on the night of the robbery. Id. Brown contends that the testimony is contradicted by Harris County Sheriff's Deputy Corey Pool who stated that he waited for the store manager and that there had been a problem ejecting the surveillance tape. Id. Brown further asserts that Waokup's perjury was brought to light by Bill Dybala, the store's director, who testified that he thought that the tape had stopped before the robbery occurred. Id.

The trial record does not support Brown's allegations that Waokup deliberately gave false testimony that was contradicted or that Hinton was aware of the perjury.  On cross-examination Deputy Pool equivocated on whether he had arrived at the store before the manager.  <u>See</u> 5 RR 18 ("It was - - I think he was identified to be as the director of the store, but he was not - - I don't think he was there when I got there.  I'm not real sure.").  Further, Hinton would not have been aware of any inconsistencies from Dybala's testimony because Dybala was not sworn as a witness until after Waokup had finished.  5 RR 93-122 (Waokup's testimony); 5 RR 123-140 (Dybala's testimony).  Finally, Brown fails to show how he was prejudiced by the testimony.  This claim will be denied because the court finds that the state habeas court did not unreasonably conclude that trial attorney's representation did not violate Brown's constitutional rights.

**B.   Ineffective Assistance of Appellate Counsel**

In his fourth claim Brown argues that his appellate counsel was ineffective because he briefed the wrong standard of review; allowed the Court of Appeals to misstate the record; and inadequately briefed the record, which allowed the Court of Appeals to further misstate the record.  (Docket Entry No. 1 at 17-18)  As stated above, the trial court found that Brown was not denied effective assistance of counsel on appeal, and the Court of Criminal Appeals denied the claim without a written order.

-20-

The two-prong <u>Strickland</u> test regarding deficient performance and prejudice applies in determining whether appellate counsel was ineffective. <u>Smith v. Robbins</u>, 120 S.Ct. 746 (2000). To establish deficient performance, Brown must show that his appellate attorney unreasonably failed to discover at least one non-frivolous issue and include it in his brief. <u>Id.</u> at 765-766. However, the appellate counsel is not required to include every non-frivolous claim in his brief. <u>Id.</u> To establish prejudice, Brown must show a reasonable probability that but for his counsel's unreasonable conduct Brown would have prevailed on appeal. <u>Id.</u> at 764.

1. <u>Incorrect Standard of Review</u>

Brown contends that his appellate attorney used the wrong standard of review regarding admission of the surveillance tape when he cited <u>Edwards v. State</u>[3] in his brief. The Fourteenth Court of Appeals noted that <u>Edwards</u> had been superceded by adoption of Rule 901 of the Texas Rules of Evidence. <u>Brown</u>, 2005 WL 363950, at *4. However, Brown has not shown that he was prejudiced by his attorney's deficient performance because there is no indication that he would have prevailed if his appellate attorney had used the correct standard. Therefore, the claim shall be denied. <u>Smith</u>, 120 S.Ct. at 764.

---

[3]    551 S.W.2d 731 (Tex. Crim. App. 1977)

2.   <u>Appellate Court's Misstatement of the Record</u>

Brown contends that his appellate attorney was ineffective by allowing the Fourteenth Court of Appeals to misstate the record concerning admission of the surveillance tape into evidence. (Docket Entry No. 1 at 18)  Brown asserts that the tape was never offered or admitted into evidence.  <u>Id.</u>

Contrary to Brown's assertion, the videotape was admitted during Waokup's testimony.  5 RR 103.  Therefore, Brown cannot show that his attorney was deficient in allowing a misstatement. Further, Brown does not show how he was prejudiced by the alleged deficiency.  Therefore, this claim shall be denied.  <u>Smith</u>, 120 S.Ct. at 764.

3.   <u>Inadequate Briefing</u>

Brown asserts that his appellate attorney did not adequately brief the record on appeal and allowed the Fourteenth Court of Appeals to further misstate the record.  (Docket Entry No. 1 at 18) Brown points out that Waokup testified that he saw two or three minutes of the surveillance tape before it jammed; however, the Court of Appeals' memorandum opinion stated that he watched five to ten minutes.  <u>Id.</u>  Brown contends that his appellate attorney was ineffective for failing to cite in his brief the exact period of time that Waokup testified at trial that he had watched the tape. <u>Id.</u>  Brown contends that this relates to the issue of whether the tape should have been admitted.

The following trial testimony relates to the issue:

Q.   [by Hinton]      How much of the surveillance tape did you watch before it jammed?

A.   [by Waokup]      Not a whole lot of it.   Not a whole lot of it.

Q.   Five minutes, ten minutes?

A.   I don't think it was that much.   It was probably about just a couple of minutes, two or three minutes.

5 RR 113.

The Fourteenth Court of Appeals' memorandum opinion stated the following:

> As to the allegation that the tape was not reliable due to its damaged condition, the record reflects that after being notified of the robbery, Waokup came to the store, stopped the videotape, and watched five to ten minutes of the tape to see if it had captured the incident.

Brown, 2005 WL 363950, at *4.

Brown fails to show that his appellate attorney should have foreseen that the Court of Appeals would have misread the record or how he was prejudiced by the time discrepancy.   The Court of Appeals noted that the witnesses testified that although the reel tape had been twisted and stretched, they did not believe that the tape itself was damaged.   Id.   Further, an investigator for the Harris County District Attorney's Office offered authentication testimony regarding the tape.   Id. at *5.   The court found that the testimony met requirement for authentication and that it was properly admitted.   Id.   Brown is not entitled to relief because he does not demonstrate that he would have prevailed on appeal but for his attorney's deficient performance.   Smith, 120 S.Ct. at 764.

-23-

C.   **Trial Court's Denial of Competency Hearing**

Brown's second ground for relief concerns the trial court's purported failure to conduct a competency hearing. (Docket Entry No. 1 at 13)  Brown alleges that he was medicated at the time of his trial and was unable to understand the proceedings against him or confer with his attorney.  <u>Id.</u> at 13-14.  He contends that the trial court should have inquired about his competency and ordered a hearing on the matter.  The respondent argues that the issue is procedurally barred from habeas review.

Brown presented this issue in his state habeas application. <u>Ex parte Brown</u>, No. 66,262-01 at 7.  The trial court found that the claim was procedurally barred from being raised in the state habeas proceeding because Brown had failed to present it on direct appeal. <u>Id.</u> at 177, <u>citing</u> <u>Ex parte Gardner</u>, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998).  Brown's state habeas application was denied without a written order based on the findings of the trial court. The Court of Criminal Appeals' decision, made pursuant to the trial court's findings, is a state procedural ruling that bars review by the federal courts.  <u>Finley v. Johnson</u>, 243 F.3d 215, 218 (5th Cir. 2001), <u>citing</u> <u>Ylst v. Nunnemaker</u>, 111 S.Ct. 2590 (1991).  Brown can only overcome this bar by demonstrating cause and prejudice or that failure to consider the claim would result in a fundamental miscarriage of justice.  <u>Morris v. Dretke</u>, 413 F.3d 484, 491-92 (5th Cir. 2005).  In his response (Docket Entry No. 15 at 18),

Brown argues that cause exists because he was denied effective assistance of counsel on appeal. The Court of Criminal Appeals denied Brown's claim that his appellate counsel was ineffective, and this court finds no fault with that holding. Moreover, the state court records reflect that the court did order a competency examination, and a physician determined that Brown was malingering. Therefore, the claim is subject to dismissal as procedurally barred.

**D.   Prosecutor's Use of Alleged Perjured Testimony**

Brown asserts that the prosecutor knowingly used perjured testimony at trial. (Docket Entry No. 1 at 14) Brown alleges that Waokup falsely stated that he arrived at the store before the police. He further contends that the prosecutor was aware of the misstatement because Deputy Pool had previously testified that he arrived before Waokup and that the prosecutor had a duty to correct the inaccuracy. Id.

In order to establish that the prosecution knowingly used perjured testimony, Brown must demonstrate the following: (1) The testimony in question was actually false; (2) the prosecution knew it was false; and (3) the testimony was material. Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996). Testimony is material only if "there is any reasonable likelihood that the false testimony would have affected the judgment of the jury." Barrientes v. Johnson, 221 F.3d 741, 756 (5th Cir. 2000). Mere

contradictions by witnesses or inconsistencies in testimony do not establish perjury without further support. Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990). Resolving conflicts of witness testimony and evidence is generally left to the trier of fact. Id. citing Little v. Butler, 848 F.2d 73, 76 (5th Cir. 1988).

As stated above in this Memorandum Opinion and Order concerning Brown's allegation of ineffective assistance of trial counsel, Deputy Pool testified that he was unsure whether he or Waokup arrived at the store first. Further, there is no evidence that the prosecutor was aware of an alleged perjury or that the false testimony affected the jury's decision. Therefore, this claim will be denied.

Based on the above findings and conclusions, the court determines that the petition for a writ of habeas corpus filed in this action should be dismissed because Brown has failed to demonstrate that he is entitled to federal habeas relief.

## VII.  Brown's Motions

Brown has filed motions seeking an evidentiary hearing and a court-appointed medical expert. This court has determined that all of Brown's claims are meritless or barred. The motions (Docket Entry Nos. 16 and 17) will be denied because Brown is not entitled to further discovery in this post-conviction proceeding. See Livingston v. Johnson, 107 F.3d 297 (5th Cir. 1997); Pedraza v. Jones, 71 F.3d 194, 196 (5th Cir. 1995).

-26-

## VIII.   Certificate of Appealability

Under 28 U.S.C. § 2253, Brown needs to obtain a certificate of appealability before he can appeal this Memorandum Opinion and Order dismissing his petition.   To obtain a certificate of appealability Brown must make a substantial showing of the denial of a constitutional right.  Williams v. Puckett, 283 F.3d 272, 276 (5th Cir. 2002).   To make such a showing Brown must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. Lucas v. Johnson, 132 F.3d 1069, 1073 (5th Cir. 1998).   For the reasons stated in this Memorandum Opinion and Order, Brown has not made a substantial showing of the denial of a constitutional right. Newby v. Johnson, 81 F.3d 567, 569 (5th Cir. 1996).   The court **DENIES** the issuance of a certificate of appealability in this action.

## IX.   Conclusion and Order

The court **ORDERS** the following:

1.   Respondent Quarterman's Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED**.

2.   Brown's Request for an Evidentiary Hearing (Docket Entry No. 16) and Requests for Appointment of a Medical Expert; and to Utilize Discovery (Docket Entry No. 17) are **DENIED**.

-27-

3.    Brown's Petition for a Writ of Habeas Corpus by a
      Person in State Custody (Docket Entry No. 1) is
      **DISMISSED with prejudice**, and a Certificate of
      Appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this 30th day of November, 2007.

_____
                    SIM LAKE
        UNITED STATES DISTRICT JUDGE

-28-